## St. John *against* The American Mutual Life Insurance Company.

A valid policy of insurance, effected by a person upon his own life, is assignable like an ordinary chose in action.

The assignee for value of such a policy is entitled, on the death of the party whose life is insured, to recover the full sum insured without reference to the amount of the consideration paid by him for the assignment.

It seems that life insurance is not regarded as a contract of indemnity merely.

St. John *v.* American Mutual Life Ins. Co., 2 Duer 419, affirmed.

ACTION in the superior court of the city of New-York, by the plaintiff as assignee of two policies of insurance. issued by the defendant to and upon the life of one Charles Noyes for $2000 each. The complaint alleged the issuing of the policies to Noyes, the assignment of them by him to the plaintiff for a valuable consideration and notice thereof to the defendant, the death of Noyes and due notice and proof thereof to the defendant, and demanded judgment for the full sums named in the policies. The answer of the defendant, among othes things, denied that the policies were assigned to the plaintiff for a valuable consideration, and alleged that the plaintiff at the death of Noyes had no interest in his life, and that he had not been injured by his death. As a further defence, it was alleged in the answer that the plaintiff only advanced or loaned to Noyes three hundred dollars as a consideration for the transfer of the policies to him, and that he was only entitled to recover upon them to this amount; and that if defendant was liable beyond this amount upon the policies, the personal representatives of Noyes were interested in the excess, and that they were necessary parties to the suit. The plaintiff, in reply, denied the new matter contained in the answer and alleged that, upon the assignment of the policies to him, he paid Noyes three hundred dollars and agreed to pay the premiums which might be payable upon them during the period for which they were issued; and in the event of the death of Noyes, to collect the amount agreed to be paid by the terms of the policies, and, after deducting the sum of five hundred dollars to reimburse the plaintiff for his advance to Noyes and his payments on account of the policy, to pay the residue to the wife of Noyes.

The cause was tried in January, 1853, before Mr. Justice Campbell and a jury. The plaintiff read in evidence the two policies of insurance mentioned in the complaint. They were dated the 11th of October, 1850; and by the terms of each, the defendant, in consideration of $4.20,

recited to have been paid by Noyes, and of $19.20 premium, to be paid on each annually, on the first days of January during the continuance of the policy, did insure the life of Noyes in the amount of $2000, for the term of six years and six months, from their respective dates, and did promise and agree to and with Noyes, his heirs, executors, administrators or assigns, well and truly to pay the sum of $2000 to Noyes, his heirs, executors, administrators or assigns, within ninety days after his death, and proof thereof. One of the policies was No. 2500, and the other No. 2499. The plaintiff read in evidence an instrument executed by Noyes, dated the 30th of October, 1850, by the terms of which he, in consideration of the sum of $300, to him paid by the plaintiff as therein recited, did sell, assign, transfer and set over unto the plaintiff the policy numbered 2500. The plaintiff read in evidence another instrument executed by Noyes, and dated February 14th, 1851, by the terms of which, Noyes, for a valuable consideration, as therein stated, did sell, assign and transfer unto the plaintiff the policy numbered 2499. It appeared that the defendant was notified that the policies were assigned to plaintiff, and an entry of their transfer to him was made in a book kept by the company for that purpose. It also appeared that these policies were issued to Noyes, in place of and upon the cancelling of a policy issued to him on the 11th of April, 1850, insuring his life for $4000, for the term of seven years. It was proved that the premiums, payable on the policies on the first of January, 1851, were paid by the plaintiff. Noyes died in March, 1851; and the plaintiff served upon the defendant notice and proof of his death, and claimed that he was entitled to the amounts named in the policies, as assignee. The defendant is a corporation, having its principal place of business in Connecticut; but the policies in question were delivered at its agency in New-York city.

The counsel for the plaintiff offered in evidence two instruments, proved to be in the handwriting and signed by the plaintiff; the one dated October 30th, 1850, by which the plaintiff promised that in case said policy No. 2500 should be paid to him, he would pay to the wife of Noyes $1500 ; the other was dated February 14th, 1851, and by it the plaintiff promised to pay such premiums as should be payable on said policy No. 2499, and to account to the wife of Noyes for such sums as he, the plaintiff, should receive thereon.   The counsel for the defendant objected to these instruments as incompetent evidence herein; he also objected to their being read in evidence, on the ground that it was not proved that they were executed at the time they bore date, or at any time prior to the commencement of the suit.   The court overruled the objections, and the instruments were read in evidence, and the counsel for the defendant excepted.

At the close of the evidence, the counsel for the defendant insisted : 1. That, as to one of the policies, the plaintiff did not prove any consideration for its assignment, or any interest in the life of Noyes beyond $300, and that he was therefore entitled to judgment on this policy only to the amount of this sum. and interest thereon ; 2. That as to the other policy, the plaintiff had not proved any consideration for its assignment, or any interest in the life of Noyes, and that to recover on this, the plaintiff was bound to prove that it was assigned to him for $500, and as to the residue in trust for the wife of Noyes; 3. That on the proof, the whole interest in the policy No. 2499, and the principal interest in the other, were in the personal representatives of Noyes, and not in the plaintiff, and that such personal representatives should have brought the action on the former, and been co-plaintiffs in this action on the latter; 4. That the plaintiff was entitled to recover in this action only $300 and interest.   The court overruled each of said objections, and instructed the jury that the plaintiff

St. John *against* The American Mutual Life Insurance Co.

was entitled to a verdict against the defendant for the sum of $4000 and interest; and the counsel for the defendant excepted. A verdict was rendered accordingly, and the defendant made a case, with leave to turn the same into a bill of exceptions, and applied to the court at a general term for a new trial, which was denied, and judgment rendered upon the verdict. (*See* 2 *Duer.*, 419.) The case was turned into a bill of exceptions, and the defendant appealed to this court.

*F. Kernan*, for appellant.

I. An insurance effected upon a life, in which the assured has no pecuniary interest, is void by the laws of England and of this state. It is a mere wager. (3 *Kent's Com.*, 368, 369 *of 1st ed.*; 441, 442 *of 7th ed.*; *Angel on Fire and Life Ins.*, §§ 55 *to* 59, §§ 295 *to* 306; 1 *R. S.*, 662, §§ 8 *and* 10.)

II. A creditor has an insurable interest in the life of his debtor; but the contract is only valid as one of indemnity, and can be enforced only to the amount of the debt. Payment of the debt, even after the death of the debtor upon whose life the policy is held, is a bar to any action against the insurer. (*See Kent and Angel, supra; Goodsall* v. *Boldero,* 9 *East,* 72.)

III. A party seeking to recover upon a policy issued to or held by him, on the life of another, upon principal and authority, is as much required to allege and prove an interest in the life insured as is the party who has an insurance on property, the title to which is vested in a third person. (*See authorities, supra.*)

IV. Aside from the effects of the papers signed by the plaintiff, which were read in evidence, he was not entitled to recover anything upon policy No. 2499, and not to exceed three hundred dollars and interest on the other:

I. Except so far as the plaintiff had an insurable interest

in the life of Noyes, they were wager policies, the same as though they had been originally issued to the plaintiff, instead of being assigned to him. The plaintiff paid the premium by which they were continued after the assign ment; 2. There is no force in the suggestion of the court below, that although these were wager policies they could be enforced in this suit, because it was not proved that the law of Connecticut forbade such gambling. The plaintiff claimed on the trial, and proved that the contracts were made in this state; but being void by the laws of this state, if made here, the plaintiff, before he could recover in our courts, was bound to prove that they were made elsewhere, and in a state where such wagers are valid (*Thatcher* v. *Morris*, 1 *Kernan*, 437); 3. Unless, therefore, the papers called a declaration of trust, were properly admitted in evidence, the plaintiff was not entitled to recover anything on policy No. 2499, and but a small sum on the other, and the judgment is erroneous. This was conceded by the court below.

V. These papers were not competent evidence, and were erroneously admitted; 1. The plaintiff did not sue as trustee; 2. These papers are merely written declarations made by the plaintiff, which are sought to be used as evidence to overcome a defence which was fatal to his action; 3. The slight presumption which exists, that a paper was executed at the time it bears date, was overcome by the circumstances disclosed in this case, touching those papers. (*Roseboom* v. *Billington*, 17 *J. R.*, 182 : 1 *Cowen and Hill's Notes to P. Evidence*, 158.)

VI. But these papers do not authorize the plaintiff to recover the full amount of the policies, as he has been allowed to do : 1. They do not make him a trustee or create an express trust, so as to authorize a suit in his name for the benefit of Mrs. Noyes (*Code*, §§ 111. 113); 2. He does not prosecute the suit as trustee, in part, he seeks to

St. John *against* The American Mutual Life Insurance Co.

recover in his individual capacity. He cannot prosecute one suit in both capacities. (*Code,* §§ 111, 113, 137.)

*A. L. Jordan,* for the respondent.

I. Charles Noyes, the assured, had an indefinite interest in his own life, and might insure to any amount the company would agree to, and the insurance was valid so long as he held it undisposed of for the benefit of his representatives. It is only when one person insures the life of another that the question of interest in the life can arise. (*Reynolds on Life Ins.,* 24, 27.)

II. The policies being good and valid in the hands of the assured, were assignable like any other chose in action. The stipulation in the policy runs to the assigns of the assured, and to restrict its assignability would therefore be a violation of the express terms of the instrument. The equitable interest in a policy is assignable at the common law, and under the Code the privity of contract and right of action vests in the assignee. (*Ashley* v. *Ashley,* 3 *Sim. Ch. R., and the opinion of the vice-chancellor,* 150, 151 ; *Blaney on Life Ass.,* 75 ; *Reynolds on Life Ins.,* 151 *to* 153 ; 1 *How.,* 390 ; *Godsal* v. *Webb,* 2 *Keene Ch. R.,* 99 ; *Code,* § 111.)

III. The wife has an insurable interest in the life of her husband. This right exists at the common law, independent of the statute of 1840. (*Reed* v. *Royal Exch. Ass. Co., Peake's Additional cases,* 70.) The statute of New-York above referred to, is not regarded as extending the right of effecting insurance, but merely as doing away with proof of the pecuniary interest in the assurance authorized by it. (*Reyn. on Life Ins.,* 52, 53.) And it gives her the additional right of insuring in the name of any other person as her trustee. Had, therefore, the policies in question been original policies, taken by the plaintiff in his own name for the use and benefit of the wife, they would have been valid ; and it is insisted that the equity of the statute extends to

policies effected by the husband, and assigned to another person as her trustee—*a fortiori*, the insurable interest of the wife in the life of her husband constitutes a good consideration for an assignment of the policies effected by him. A creditor may insure the life of his debtor, or may take an assignment of a policy effected by the debtor on his own life, for security of his debt. In the former case, if the debt be paid the policy becomes void, but in the latter case it reverts to the representatives of the assured. (*Ellis on Life and Fire Ins.*, 124, 125, 126; *Godsall and others* v. *Boldero*, 9 *East*, 72; *Reyn. on Life Ins.*, 54, 155.)

IV. The husband may insure his own life in his own name, and assign the policy for the benefit of his wife. (*Ubi supra.*) There is nothing in such an insurance or assignment in the nature of a gambling transaction, or against public policy. On the contrary, it was the original and legitimate purpose of life insurance to provide for the widows and orphans, on the death of those on whose exertions while living, they depended for support. (*Reyn. on Life Ins., chap.* 1; *Ellis on Life and Fire Ins.*, 99, *part* 2, *chap.* 1, § 2.)

Independent of the statute, 14 *Geo. III., chap.* 8, a wagering policy is void as against public policy. (*Lord* v. *Dall*, 12 *Mass. Rep.*, 115.) But no policy for the benefit of the widow or orphan of the life insured has ever been held invalid. That the equitable interest of any valid chose in action may be assigned *ad libitum*, when the rights of creditors are not interfered with, is a principal of so universal application as not to need support by reference to authorities.

CRIPPEN, J. An insurance upon the life of an individual, is a contract by which the insurer, for a certain sum of money or premium proportioned to the age, health, profession, and other circumstances of the person whose life is insured, engages that if such person shall die within the period limited in the policy, the insurer shall pay the sum

St. John *against* The American Mutual Life Insurance Co.

specified in the policy, according to the terms thereof, to the person in whose favor such policy is granted. The risk of the insurer is the death of the person whose life is the object of the security.

Although the promise in this case is to pay to Mr. Noyes, his heirs, &c., yet it is manifest, from the conditions of the contract and the nature of the transaction, that no payment could be made to him, because nothing would become due or payable until after his death, consequently the promise of the company must necessarily be fulfilled with the executors, administrators or assigns of the assured, and not with him. By the terms of each of the assignments, the assured, Noyes, absolutely sold, assigned and transferred each of said policies of insurance to the plaintiff.

It seems to me it cannot be doubted, but that the assured might legally assign the policies to the plaintiff. It has been said, that without the right to assign, insurances on lives lose half their usefulness. (1 *Bell's Commentaries*, 545.) The company, by the express terms of each of the policies, agreed to pay the sum of $2000 to Charles Noyes, his heirs, executors, administrators or assigns; another part of the policies provides for giving notice to the company, in case an assignment shall be made by the assured.

I am not aware of any principle of law that distinguishes contracts of insurance upon lives, from other ordinary contracts, or that takes them out of the operation of the same legal rules which are applied to and govern such contracts. Policies of insurance are choses in action; they are governed by the same principles applicable to other agreements involving pecuniary obligations. The testimony given on the trial proved a lawful and valid sale, transfer and assignment of the policies in question by Mr. Noyes, the assured, to the plaintiff.

So far as regards the question of the liability of the company, it is not material whether the plaintiff paid a full consideration upon such transfer or not. Such liability in no

manner depends upon the amount of consideration of the assignments. The assignments on their face show a sufficient consideration to render them valid in the hands of the assignee as against the company. On the death of Mr. Noyes, if he died within the period limited by the policies, the company agreed to pay the amount of the insur·ance. It cannot be material, neither does it affect the extent of the liability of the company, whether the money is due and payable to the legal representatives of the assured or to his assignee.

It follows, from this view of the case, that the proof allowed on the trial of the trust agreements made by the plaintiff, by which he is liable to account and pay over to the widow of Mr. Noyes a large portion of the money, on receiving the same of the company on the policies, did not and could not legally affect the right of the plaintiff to recover in the action, or the amount of such recovery. If that proof is entirely stricken out of the case, the plaintiff, in my opinion, is still entitled to recover the whole amount of the insurance in this action.

I do not agree with the counsel of the defendant, that the assignee must have an insurable interest in the life of the assured, in order to entitle him to recover the amount of insurance. If the policies were valid in their inception, the assignment of them to the plaintiff did not change the liability of the company. The case of *Ashley* v. *Ashley* (3 *Simons*, 149,) is a direct authority to this point. It is referred to and approved in 3 *Kent's Com.*, 369, *note*. The policy in the case of *Ashley* v. *Ashley* was issued for £1000. It was afterwards assigned by the person effecting it, for a small but valuable consideration, to one Heath, whose executors sold and assigned it to General Ashley for £320. After the death of General Ashley, in an action between his widow and his executors, a decree was made that the policy should be sold for the benefit of the estates; it was sold accordingly; the purchaser, after the sale, declined to accept the

St. John *against* The American Mutual Life Insurance Co.

policy on account of a defect of title, on the ground that the assignment to the first assignee was made for a mere nominal consideration, which rendered the transfer invalid, or if not so, the purchaser could only recover the amount paid by the assignee. The court, however, held the objection not well taken, expressly deciding that an assignee, in good faith of an existing life policy which was valid when effected, is entitled in all cases to demand and require payment of the whole sum insured. It seems to me that this decision is supported by reason and sound judgment.

The point made by the defendant's counsel, that a creditor has only an insurable interest in the life of his debtor to the amount of his debt, has no application to this case.[1]

The whole proof shows that Mr. Noyes effected the insurance upon his own life; it was not done by the plaintiff; he had no agency in procuring the policies to be issued; neither does it appear that the assured was even indebted to the plaintiff at that time.

In conclusion, my opinion is that the judgment should be affirmed.

All the judges concurred in the foregoing opinion.

Judgment affirmed.

---

[1] It seems that the case of *Godsall* v. *Boldero* (9 *East*, 72), is not now regarded as law by the English courts. In that case it was held, that where a creditor insured the life of his debtor, the contract was in substance one of indemnity against the loss of the debt, and that its payment, even after the death of the debtor by his executors, was a bar to a recovery by the creditor upon the policy. But in the case of *Dalby* v. *The India and London Life Assurance Company* (15 *Common Bench R.*, 365; *found also in* 80 *Eng. Com. Law Reports*, 364), recently decided in the Exchequer Chamber after much discussion, it was held that the case of *Godsall* v. *Boldero* was erroneously decided; that the contract of life insurance was not one of indemnity merely; and that where a party had an interest in the life insured at the time of effecting the policy, the circumstance of his interest ceasing in such life, before the death, did not invalidate the policy.